AMY B. YOUNGS et al., Appellants, v. EVA YOUNGS et al., Appellees.

**WITNESSES: Competency—Transactions With Deceased—Life Tenant Without Interest.** On the issue, in an action to quiet title, whether certain letters alleged to have been written by the former deceased owner of land constituted a gift of the land, the life tenant under said gift who is not a party to the action nor possessed of any present interest in the land may testify to the receipt by him of said letters and to the contents of those which are lost, it appearing that the plaintiff calling said witness claimed title solely through the remaindermen.

**DEEDS: Form and Contents—Sufficiency of Writing.** Evidence reviewed, and *held* that certain letters proffering a gift of land, together with the fact that the donee took immediate possession of the land, constituted a sufficient conveyance of the land.

**REMAINDERS: Requisites and Validity—Acceptance by Life Tenant.** Acceptance by a life tenant of a gift of land may be good on behalf of a remainderman.

**ADVERSE POSSESSION: Laches by Claimant Out of Possession.** A claimant to land who allows another, for almost a half century, to remain in open, notorious, and unquestioned possession, under an absolute claim of ownership, effectively bars himself, by his own laches, from asserting ownership.

**ADVERSE POSSESSION: Laches by One in Possession.** A claimant to land who is in open, notorious, and undisturbed possession of land under a claim of absolute ownership, by virtue of an unrecorded conveyance, may not be said to be guilty of laches because he did not resort to the courts for a final adjudication of his rights.

**JUDGMENT: Conclusiveness—Construction of Will.** A decree construing a will on the question of the right of residuary legatees as against the heirs at law of testator does not constitute an adjudication of the title to land located in a foreign state.

**JUDGMENT: Conclusiveness—Decree as to Life Tenant.** A decree confirming the claim of a party to a life interest in lands is obviously not an adjudication of the interest of remaindermen who are not even parties to the action.

TRIAL: Setting Aside Submission—Laches. A litigant may, by his
8  own lack of diligence, effectively bar himself from having a sub-
mission set aside in order to introduce further testimony.

*Appeal from Jasper District Court.*—H. F. WAGNER, Judge.

JANUARY 15, 1924.

ACTION to quiet title to a farm of 280 acres, located in
Jasper County, Iowa. In a cross-petition, defendant William-
son prays· that title be quieted in him. Decree was entered in
his favor; from which plaintiffs appeal.—*Affirmed.*

*Deacon, Good, Sargent & Spangler* and *Ed. P. Malmberg,*
for appellants.

*John E. Cross,* for appellees.

ARTHUR, C. J.—I.  Prior to the events involved in this
action, there lived in New York three brothers, Henry, Hiram,
and Oliver Youngs. The brother Henry Youngs is the man
spoken of·in this record as Henry Youngs of New York. Henry
Youngs of New York had no children, and his wife preceded him
in death many years. He died on November 3, 1868. Henry
Youngs of·New York, Hiram Youngs, and Oliver Youngs had
a sister, who married Galen Terry, who was secretary to Henry
Youngs of New York. Hiram Youngs had a son, by the name of
Henry Youngs, known in this record as Henry Youngs of Goshen,
New York. Henry Youngs of Goshen died September 9, 1885,
leaving surviving his widow, and, as his children, plaintiffs in
this action, Dr. Henry Youngs, Amy B. Youngs, Edith Youngs,
Anna E. Youngs Hawkins, and Maida Youngs Roe. The widow
of said Henry Youngs of Goshen died some years later, leaving
the same heirs as her departed husband. Plaintiff Amy Stuart
Roe is the daughter of Maida Youngs Roe. Dr. Henry Youngs,
trustee, plaintiff, is trustee of the property of Maida Youngs
Roe and Amy Stuart Roe.

Oliver Youngs, one of the above-mentioned brothers, had
three sons: Henry Youngs, who is known in the record as Henry

Youngs of Denver, and John Youngs and Gideon Youngs, who perished in the Civil War.

Plaintiffs' claim to the title to the land in controversy is based upon devises in the residuary clause of the will of Henry Youngs of New York, and subsequent transfers of the property claimed to convey the title and bestow it in the plaintiffs as follows: On January 26, 1860, Henry Youngs of New York made a will, giving his property to collateral relatives, principally nephews and nieces. The land in controversy was devised to John Youngs and Gideon Youngs, brothers of Henry Youngs of Denver, with remainder in their children. John Youngs and Gideon Youngs died before the testator, without having married, and leaving no children. The residuary devisees and legatees under the will of Henry Youngs of New York were Samuel J., Lewis, Sophia Youngs, Elizabeth Youngs, Frances Youngs, and Theophilus Youngs, children of Hiram Youngs, deceased brother of Henry Youngs of New York. From 1873 to 1880, Henry Youngs of Goshen received conveyances of the land in controversy from the residuary legatees or devisees under the will of Henry Youngs of New York. In 1884, Henry Youngs of Goshen died intestate, leaving as his only heirs at law the plaintiffs in this case. His widow also died intestate, some years later, leaving as her only heirs at law the plaintiffs in this case. Maida Youngs Roe died in 1913, leaving her property in the hands of plaintiff Dr. Henry Youngs, as trustee.

After the will of Henry Youngs of New York was admitted to probate in New York, question arose as to whether the property devised in the will to John Youngs and Gideon Youngs, deceased, among which property was the Iowa land in controversy in the instant case, should pass to the residuary devisees under the will, or should be treated as intestate property, and go to the heirs of testator. An action was instituted in a New York court by the executors for construction of the will in that respect. On appeal, in about 1871, the New York court of appeals held that the will passed the property devised to John Youngs and Gideon Youngs to the residuary devisees under the will, in preference to the heirs at law of testator. Appellants urge that appellee Williamson is estopped by said

decree from claiming, as he does, under an alleged contract between Henry Youngs of New York and Henry Youngs of Denver, in behalf of himself and his children.

In 1873, about two years after the will was construed by the New York court, Henry Youngs of Denver brought an action in the circuit court of Jasper County, Iowa, in which he claimed to own a life estate in the Iowa land, and that his children were the owners of the remainder after his death. The decree entered simply established that Henry Youngs of Denver held the land during his life, subject to a rental of one dollar per year and payment of taxes, and was silent as to the rights of the children. Appellants make claim for said decree that it left the title to the remainder estate in the property to the residuary legatees under the will of Henry Youngs of New York, predecessors in title of the plaintiffs in the instant action, and that appellee is barred and estopped by said decree.

Appellee bases his claim of title to the land in controversy upon a claimed contract, consisting of certain letters and subsequent conveyances, briefly stated as follows: It is claimed that, on September 19, 1868, Henry Youngs of New York caused to be written by Galen Terry, his secretary, a letter, known in the record as Exhibit A, to his nephew, Henry Youngs of Denver. Hereinafter will be set forth the claimed letter in full. Briefly stated, the letter proffered to the nephew a life estate in the land, with remainder in his heirs, saying, "This will give you a good and sufficient title." The nephew was to pay a rental of one dollar per year. It is claimed by appellee that, on September 25, 1868, Galen Terry, secretary to Henry Youngs of New York, wrote a second letter to Henry Youngs of Denver, known in the record as Exhibit B. The substance of the letter, as claimed by appellee, is that the writer was authorized by Henry Youngs of New York to write to Henry Youngs of Denver and present to him the Jasper County land for the period of his natural lifetime, for the annual rental of one dollar per year, and, at the death of said Henry Youngs of Denver, the land was to go to his children in fee simple; and that Henry Youngs of New York would pay the taxes for the year 1868, after which Henry Youngs of Denver was to pay the taxes. The letter further directed Henry Youngs of Denver to take

immediate possession of the land and improve it, etc., concluding with the statement: "Go on and take possession of the lands and improve them at once. At your death, they are your children's." It is claimed by appellee that Henry Youngs of Denver, upon receipt of Exhibits A and B, immediately wrote to his uncle, Henry Youngs of New York, thanking him for the generous offer, and asking him to confirm the authority of Galen Terry to make the propositions contained in the letters, Exhibits A and B; and that a letter known in this record as Exhibit C, dated October 7, 1868, was received from Henry Youngs of New York by Henry Youngs of Denver, stating that he intended to carry out the proposition made in the letters written by Galen Terry.

II. We will first consider the evidence offered by appellee Williamson respecting the letters, Exhibits A, B, and C, and the evidence concerning a letter of acceptance claimed to have been written by Henry Youngs of Denver to his uncle, Henry Youngs of New York, by which correspondence appellee claims a contract was made out, and a life estate in the land conveyed from Henry Youngs of New York to Henry Youngs of Denver, and the remainder or fee estate in the land conveyed to the children of Henry Youngs of Denver, appellee's predecessors in title. Exhibit A reads:

"We have not heard from you since your uncle sent the proposals to lease you a portion of his Iowa lands. We are anxious to know what progress you are making in improvements, how much land you have got under cultivation, or have got broken up and fenced in. Have you done anything with the stone or marble quarry? We have been informed by Mr. Lancaster, who owns a large number of sections in Iowa, that your land is well located and becoming very valuable. We trust you have been able to make a good beginning towards improving them with a view of making a first-rate farm. As a further inducement for you to do so, your uncle offers you a life lease of the whole two hundred and eighty acres of land belonging to him in town of Palo Alto, Iowa, for the yearly rent of one dollar and the taxes and at the expiration of the lease, which is to continue during your natural life, it is to be left to your heirs or assigns forever. This will give you a good and suffi-

cient title and as you appear to be ambitious and desirous of becoming a farmer, I think this is a fair opportunity to succeed and a generous offering on the part of your uncle to help you in your enterprise, for the offer he makes amounts to the gift of the whole of these lands and under control of an industrious man who will be governed by Dr. Franklin's motto, 'To either hold or drive, in five years,' he can have a beautiful and valuable farm. Since the death of your brother-in-law, Mr. Vanclee, I have been informed he left his family in reduced circumstances. It occurs to my mind that it might be a mutual benefit to your sister and yourself to have her help with you on your farm in Iowa. This is a suggestion of my own which I have not mentioned to any member of the family before, believing you to be the better judge about any such arrangement. How are your father and mother with the other members of your family in Illinois? Are they well and getting on well with their farming business? Accept our kindest regards and make the same to your parents and brothers.''

Henry Youngs of Denver was called as a witness on behalf of appellee. The letter Exhibit A was shown the witness, and he was asked to examine it and state in whose handwriting it was. Counsel for appellants objected to the competency of the witness to testify, and to the testimony sought, as incompetent, under Code Section 4604, as calling for personal transactions between the witness and Henry Youngs of New York, deceased. The same objection was interposed throughout the examination. Witness testified that he was acquainted with the handwriting of Galen Terry, and that Exhibit A was in the handwriting of Galen Terry, including the signature; that he received the letter in the course of the mail, and that it had been in his possession ever since; that, shortly after he received Exhibit A, he received another letter, written and signed by Galen Terry; that he had lost said letter long ago. Witness testified to the contents of the lost letter. The contents as testified to are set forth in Exhibit B, offered in evidence as follows:

''I am authorized by your uncle, Henry Youngs, to write to you and present to you the lands now belonging to him in Palo Alto Township, Jasper County, and state of Iowa, for the term of your natural lifetime for the annual sum of one

dollar per year after which time, namely, your death, it is to go to your children in fee simple. He says he will pay the taxes for the year 1868, after which you are to pay them. Your uncle says you had better go on at once and take possession and improve the lands, to go out this winter and get out posts and rails enough to fence the land in the spring and that I will send you the life lease for the sum of one dollar per year and you pay the taxes after the year 1868. Go on and take possession of the lands and improve them at once; at your death they are your children's.''

Witness testified that Galen Terry, who had written the letters, Exhibits A and B, was his uncle's secretary; that, immediately after receiving the letters, Exhibits A and B, he wrote and mailed to his uncle, Henry Youngs of New York, a letter thanking him for what he was doing, and accepting his offer, and stating that he would take possession of the land at once; that thereafter he received from his uncle, Henry Youngs of New York, a letter, Exhibit C, which is as follows:

"Your two letters, the first dated 21st of September, 1868, giving an account of the affairs of the family, the other dated 28th September, 1868, in answer to a letter directed to you (by my direction) and wrote by Mr. Terry, were duly received in regard to the lands in Township Palo Alto, Jasper County, Iowa; his statement to you was full, which I intend to carry out. You can go on and do what is best in the case. I will pay the taxes for the year 1868. You will pay them afterwards. After your death, the lands will descend to your children if you have any. You are entirely safe in this matter; as to Henryetta, I can give no advice.''

Witness testified that Exhibit C was in the handwriting of Henry Youngs of New York, and was in reply to his letter of acceptance of the offer made by his uncle; that he received said letter two or three days after the date thereof; that the letter had since been in his possession; that, in the fall of 1868, after receiving the Galen Terry letters, Exhibits A and B, and the letter Exhibit C, he immediately went from Geneseo, Illinois, where he then resided, to the land in Iowa, took possession of it, and arranged for fencing it; that he engaged board with a man by the name of Reasnor, who is now dead, who lived near

the land; that he arranged for fencing the land; that it was late in the fall, and he could do but little by way of improving the farm that fall; that his going upon the land in the fall of 1868 was about a month before the death of his uncle, which occurred on November 3, 1868; that the land was open prairie, and had not been improved in any way; that, in the spring of 1869, he went upon the land with teams, wagons, plows, and other implements, and broke up about 100 acres, and fenced the land, built a small house and shed barn, and dug a well, and in the fall of that year, he cross-plowed the breaking, and paid for the improvements; that the improvements cost approximately $1,000; that the value of the land at that time did not exceed $10 per acre; that, after plowing the land, he sowed it to wheat; that he operated the land personally for two years; that, after he ceased farming the land himself, he rented it, year after year, from 1871 to 1912, to tenants; that, after he took possession in October, 1868, he paid the taxes on the land, or caused them to be paid, and paid, or caused to be paid, to the executors of the estate of Henry Youngs of New York, the sum of one dollar per year, mentioned in the letters, as long as the executors lived; that the one dollar per year was paid up to 1885; that he relied upon the letters, Exhibits A, B, and C, in taking possession of and improving the land; that he considered the letters sufficient contract for him to "go and take charge of the property for my lifetime, and at my death, to my children, in fee, as the letters stated;" that, at the time he took possession of the land, in the fall of 1868, his claim was a life estate for himself, and at his death the land would go to his children in fee simple; that he continued to make such claims to the premises from the time he took possession of it, in October, 1868, until he transferred his life estate to Eva Youngs, on September 6, 1916; that Eva Youngs is the widow of his son, Henry Youngs, Jr.; that his living children are Agnes M. McFarland, born in 1870, and Jessie E. Black, born in 1873; that his son, Henry Youngs, Jr., born in 1872, died in February, 1917; that, from the time his children were born, he had claimed that, at his death, the land would go to his children in fee simple; that he continued to make such claim until the death of his son, Henry Youngs, Jr., and until his daughters, Agnes M. McFarland and Jessie

E. Black, transferred their interest to appellee W. A. William-
son; that, since he took possession of the land, in the fall of
1868, it has never been in the possession or under the control
of any person other than himself, tenants holding under him,
his son, Henry Youngs, Jr., and the widow of his deceased son,
defendant Eva Youngs; that, in 1872, in a letter addressed and
posted to the executors of the estate of Henry Youngs of New
York, he requested that they convey to him a life estate in the
premises, with remainder over at his death to his children, in
accordance with the agreement between him and his uncle,
Henry Youngs of New York; that in the letter he set forth the
statements of the letter he had received from his uncle, Exhibit
C; that he received an answer to his letter from Charles Kelley,
executor; that he had lost said letter; that Kelley's letter stated
that the other executor, Henry Youngs, son of Hiram Youngs,
would not co-operate with him; that his son, Henry Youngs,
Jr., had actually occupied the farm after February, 1912, until
his death, in February, 1917; that his son's widow, Eva Youngs,
had been in possession of the premises since the death of her
husband; that, when his son took possession, the farm had been
allowed to run down, by renters, and his son built up and im-
proved the premises, spending approximately $14,000; that his
son obtained the money from appellee Williamson.

Henry Youngs of Denver was made a party defendant in
the instant cause. On filing disclaimer of any interest in the
land involved, and in the action, he was dismissed from the
action, prior to the time his testimony was
given. He was not a necessary or proper party
defendant. He had conveyed his interest in the
property to Eva Youngs, widow of his deceased
son, Henry Youngs, Jr., prior to the commencement of this
action, such transfer being made on September 6, 1916. He
was not, therefore, disqualified as a witness, by reason of being
a party to the action. Neither was the witness a party by,
through, or under whom appellee claims. Appellee Williamson
does not claim through the witness. He claims by purchase
from the children of Henry Youngs of Denver; and the chil-
dren of Henry Youngs of Denver did not claim through their
father by inheritance, purchase, or otherwise, but claimed un-

1. WITNESSES:
competency:
transactions
with deceased:
life tenant with-
out interest.

der and by virtue of a contract which it is claimed is made out by the letters, Exhibits A, B, and C. The only point, as we understand the record, where Henry Youngs of Denver figures in the claim heretofore made by his children, and the claim now made by appellee, is that Henry Youngs of Denver made the contract for the benefit of his children, who have since conveyed to appellee. Under this situation, the witness was not incompetent, under Code Section 4604, to testify respecting the letters which it is claimed constitute the contract of conveyance; and his testimony as to the contents of lost letters (proper foundation having been laid), including his claimed letter of acceptance, and as to his taking possession of and occupancy of the land, is competent. *Horner v. Maxwell,* 171 Iowa 660; *Campbell v. Kerr* (Iowa), 173 N. W. 66; *Scott v. Brenton,* 168 Iowa 201. The witness was competent to testify to having received letters from and written letters to the decedent, Henry Youngs of New York. *Britt v. Hall,* 116 Iowa 564.

Oliver Youngs, brother of Henry Youngs of Denver, testified that his uncle, Henry Youngs of New York, practically raised his brother, Henry Youngs of Denver, sent him to school, and paid his bills; that Galen Terry was their uncle; that Galen Terry was secretary to his uncle, Henry Youngs of New York; that he knew the handwriting of Galen Terry; that he knew the handwriting of Henry Youngs of New York; that Exhibit A is in the handwriting of Galen Terry. Witness was shown Exhibit C, and stated it was received by his brother, Henry Youngs of Denver, and that he read it, at the time it was received; that he positively identified the letter as being in the handwriting of his uncle, Henry Youngs of New York; that his brother answered the letter immediately; that he read the letter his brother wrote; that the letter accepted the proposition made in the letter, Exhibit C; that the letter, Exhibit C, was read and talked over in the family as an important affair; that, very soon after Exhibit C was received, he went with his brother to the land; that they went from Geneseo, Illinois, to Jasper County, Iowa; that a man by the name of Reasnor, who lived near the land, showed the land to them. Witness also identified Exhibit D as a letter in the handwriting of Henry Youngs of New York, and said that his brother showed it to him, at the

time it was received; that, at the time when they located the land, in the fall of 1868, his brother made claim to a life estate in the land, and that at his death it was to go to his children. Exhibit D, referred to and identified by the witness, is with respect to a timber tract, and is as follows:

"103 Clinton Place,
New York, October 28, 1868.

"Your letter of the 17th inst. has just been received. You ask me to purchase a piece of 40 acres of woodland which, at the price named of $20 per acre, will amount to more money than I have to spare, but as you consider it so necessary to the farm, I will consent to purchase the land. The title must be thoroughly examined and approved of by a competent lawyer, who can be had at Jasper City I presume. You can purchase it for me. The conveyance is to be to Henry Youngs of the city and state of New York. If he has a wife, she must sign the deed and everything must be done in the most careful manner by a good lawyer. The present plan will be to take an article of agreement and make a payment on the lands, all in a legal way. It would be better to have the money payable on the first of January or February, next, if you can get it that way. The taxes must be paid up and the title thoroughly searched in all the courts and for tax sales. You can proceed at once.

"[Signed] Henry Youngs"

Witness further stated that, at this remote date, he could not remember the exact words of a letter written by his brother to their uncle, after receiving the letters written by Galen Terry, but that the substance of the letter was that his brother accepted the offer of the land, and thanked his uncle for the same, and stated that he would at once go out to the land and take possession of it.

Jessie E. Black, daughter of Henry Youngs of Denver, testified that, about 25 years ago, she heard of the existence of the letters purporting to be written by Galen Terry and Henry Youngs of New York, and also of a letter that her father claims to have written to his uncle, Henry Youngs of New York; that, previous to the time she conveyed her interest in the land to

defendant Williamson, in February, 1919, she claimed to be the owner of an undivided one-third interest in the farm, subject to the life estate; that she based such claim upon the letters, which she had not seen, but the contents of which were related to her, from Galen Terry and Henry Youngs of New York, and upon her father's acceptance of the offer contained in such letters, and upon her father's occupying and improving the farm.

Agnes M. McFarland testified that, when she was a young girl, she knew of the existence of the letters purporting to have been written by Galen Terry and Henry Youngs of New York to her father; that the contents of said letters were discussed in the family; that she did not read the letters until in January, 1919; that, previous to the conveyance in February, 1919, by herself and her sister, Jessie E. Black, she claimed an interest in the land, subject to the life estate therein of her father; that she based said claim on the fact that she believed that there was a deed or gift recorded, which conveyed the property to the heirs of her father, subject to the life estate of her father; that such conveyance had been executed by Henry Youngs of New York; that she received $1,000 in consideration of the execution and delivery of her deed of January 25, 1919, to appellee Williamson.

H. M. Reasnor, William M. Reasnor, and D. B. Reasnor, sons of Samuel Reasnor, who were boys living with their father on a farm near the land in controversy in the fall of 1868, testified, in substance, that they first became acquainted with Henry Youngs of Denver in the fall of 1868; that said Henry Youngs of Denver made his home with their family while he was making preparations to improve the land in controversy; that said Henry Youngs, in the fall of 1868, made arrangements to have part of the land broken up during the next year; that, in the spring of 1869, he broke up part of the land, and fenced it, and built a house on it; that Henry Youngs said that he had an uncle in the east, who said that, if he would go upon and improve the place, he would give it to him.

III. We think that there is, in the testimony of the witnesses Henry Youngs of Denver and his brother, Oliver Youngs, sufficient competent evidence to prove the letters, Exhibits A,

2. DEEDS: form
and contents:
sufficiency of
writing.

B, and C; and that a contract of conveyance, based upon a valuable consideration, is established. Exhibit A, written by Galen Terry, secretary to Henry Youngs of New York, containing the first offer of the land to Henry Youngs of Denver and his children, and the letter Exhibit C, written by Henry Youngs of New York, himself, are abundantly proved to be genuine. These letters are identified by both Henry Youngs of Denver and his brother, Oliver Youngs, and we think it is established by competent evidence that Henry Youngs of Denver accepted in writing the offer made to him by his uncle. The receipt by Henry Youngs of New York of the claimed letter of acceptance is indicated by the timber-land letter, written by Henry Youngs of New York, Exhibit D. Moreover, it is established by the evidence that Henry Youngs of Denver went upon the land and took possession of it in the fall of 1868, while his uncle was still living. Taking possession of the land in 1868 is abundantly established by competent testimony of Henry Youngs and the testimony of Oliver Youngs and the Reasnors. The possession so taken of the land was sufficient, in view of its then wild state. *Booth & Graham v. Small & Small,* 25 Iowa 177; *Dice v. Brown* 98 Iowa 297, 304. The possession taken of the land, as shown by the evidence, was sufficient to make it an acceptance of the offer made to Henry Youngs of Denver. *Hankins v. Young,* 174 Iowa 383. We think that the letters offered in evidence, together with other testimony, establish a binding contract of conveyance of the fee in the land to the children of Henry Youngs of Denver; and when followed, as it was, by immediate possession by Henry Youngs of Denver, that the children of

3. REMAINDERS:
requisites and
validity: accept-
ance by life
tenant.

Henry Youngs of Denver became entitled to the remainder interest in the property, as a consummated gift. Also, acceptance of a gift by a life tenant may be good on behalf of a remainderman. *Garden v. Moore,* 174 Iowa 376; *Pranger v. Pranger,* 182 Iowa 639; *Hagerty v. Hagerty,* 186 Iowa 1329, 1333.

The record discloses that Henry Youngs, Jr., a remainderman, son of Henry Youngs of Denver, went into possession and occupancy of the farm in 1912, and continued in possession from

4. ADVERSE POS-
SESSION: laches
by claimant out
of possession.

1912 to 1917, unchallenged by anyone; that he made valuable improvements upon the farm. He did not lease the land from his father, paid him no rent, but apparently went on and occupied and improved the farm as his own. While he was so occupying the farm, in 1916, his father transferred his life estate to Eva Youngs. We think the possession of the premises by Henry Youngs of Denver, personally and by tenants, and the possession of the premises by Henry Youngs, Jr., were sufficient to charge all parties with knowledge of the facts and circumstances under which possession was so held. Under this situation, we think that the claim of plaintiffs is barred by their laches. *Bacon v. Chase,* 83 Iowa 521; *Horr v. French,* 99 Iowa 73; *Woodward v. Barr,* 128 Iowa 727. On the other hand, laches cannot be imputed to appellee,

5. ADVERSE POS-
SESSION: laches
by one in pos-
session.

or to his predecessors in title; for they have been continuously in the peaceable possession and occupancy of the premises, and no resort to a court was necessary, to maintain their rights. Such continuous possession and occupancy were notice to the whole world, and they had no occasion to resort to a court of equity until it became apparent that there was some hostile assertion of right. *Gray v. Bloom,* 151 Iowa 566, 571.

IV. The claim of appellants that the conduct of Henry Youngs of Denver in the New York litigation and the construction of the will by the New York court of appeals operate to

6. JUDGMENT: con-
clusiveness: con-
struction of
will.

estop appellee from claiming title to the land in controversy under the claimed ·contract, consisting of the letters introduced in evidence, is without merit. The decree in that case was not an adjudication as to the title of the Iowa land. It purported merely to construe the will on the question of the right of the residuary legatees, as against the heirs at law of the testator. Such was the only issue involved in the case, and the only issue determined. Henry Youngs of Denver was not required to set up a counterclaim or cross-petition in that action, to secure or protect the rights of himself and his children in the Iowa land, under his contract with Henry Youngs of New York. *Youngs v. Youngs,* 45 N. Y. 254; *Price v. Macomber,* 163 Iowa 406. In the New York litigation, no claim was based on the letters which appellee claims

constitute a contract of conveyance in the instant case; but, even if said letters had been submitted to the New York court, the land being in Iowa, determination of the question of title thereto would be exclusively a matter for determination by Iowa courts. *Morris v. Loyd,* 183 Iowa 1056.

V.   In 1873, Henry Youngs of Denver instituted an action in the circuit court of Jasper County, Iowa, making the executors of the will of Henry Youngs of New York defendants, alleging that, in September, 1868, Henry Youngs of New York "gave to the plaintiff a life estate in said land [the land in controversy in the instant case] for and during the life of the plaintiff, with title in fee simple to plaintiff's children after the death of plaintiff;" and alleging that the contract of conveyance consisted of certain letters. The letters are the same letters relied upon by appellee in the instant case. The petition prayed that the court "decree that the land belongs to the plaintiff for life." The decree entered was that plaintiff have said premises during his natural life, subject to the annual charge of one dollar per year and payment of the taxes. Appellants urge that the decree is an adjudication which bars appellee. We think the decree is not an adjudication cutting off the rights of appellee. Appellee's predecessors in title, the children of Henry Youngs of Denver, were not joined in that action. The action does not purport to be brought in their behalf. No relief is asked with reference to their title to the land, and no judgment was entered with reference to their rights. Whatever rights they had were left undetermined. *Cedar Rapids Cold Stor. Co. v. Lesinger,* 188 Iowa 1364. Henry Youngs of Denver, the life tenant, was not in privity with the remaindermen in such sense as to bind them by the judgment in said suit, in which the remaindermen were not parties. *Corbin v. McAllister,* 144 Iowa 71, 81; *Matson v. Poncin,* 152 Iowa 569.

7. JUDGMENT: conclusiveness: decree as to life tenant.

VI.   The evidence in the cause was taken on November 4 and 5, 1920. In December, the argument was concluded, and the case fully submitted, and taken under advisement by the court. Decree was entered on July 1, 1921. On April 3, 1921, plaintiffs moved the court to open the case and grant them permission to offer tes-

8. TRIAL: setting aside submission: laches.

timony to the effect that the signature to the letter Exhibit C was a forgery, which permission was refused. Affidavits in support of the motion and in resistance thereto were filed. The affidavit of an attorney for appellants, in support of the motion, in substance stated that, at the time the evidence was taken in the cause, and at the time Exhibit C was offered in evidence, he had no knowledge of the existence of authenticated signatures of Henry Youngs of New York, whose signature is purported to appear on said Exhibit C; that, after the evidence in the case was submitted, information came to him of the existence of genuine and authenticated signatures of said Henry Youngs of New York; that the signature to Exhibit C is not the genuine signature of Henry Youngs of New York. Affiant attached to his affidavit exhibits which he alleged contained genuine and original signatures of Henry Youngs of New York. In the motion, plaintiffs stated that failure to offer said evidence at the time of the trial was due to oversight, inadvertence, and mistake. The cause was begun December 2, 1918. Answer was filed in February, 1919, disclosing the fact that appellee relied upon the letter Exhibit C, as constituting part of the contract claimed. The original letter, Exhibit C, was produced on April 11, 1919, when the testimony of Henry Youngs of Denver was taken. We think that appellants failed to show proper diligence to discover the evidence which they sought to introduce. Furthermore, appellants attached to their motion the original documents which they desired to introduce in evidence, and thus presented to the trial court for his inspection the documents which they wanted to introduce in evidence. We think the trial court did not abuse the discretion vested in him, in refusing to open the case.

Decree and judgment of the court below are affirmed.— *Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.